# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Lazarus *against* Follmer.

If money be made upon an execution in favour of two or more plaintiffs, a payment to any one of them is good, and discharges the sheriff, and he cannot afterwards maintain an action against the one whose receipt he took for it, for the use of the other.

The charge of the court to the jury in one cause cannot be given in evidence in another, as proof that that suit was prosecuted for a particular use.

ERROR to the Common Pleas of *Lycoming* county.

Peter Lazarus against William and David Follmer, executors of Adam Follmer, deceased. Case in *assumpsit*. The whole case is fully stated in the opinion of the Court.

*Miller* and *Greenough,* for plaintiff in error.
*Maynard,* for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—To understand this case, I had to go back to some previous matters which I proceed to state, that others may understand it. Some twenty-five years ago, three small congregations, one of German Lutherans, one of German Reformed, and one of English Presbyterians, agreed to join in building a place of wor-

[Lazarus v. Follmer.]

ship. None of these congregations was then incorporated, and they appointed individuals to draw up the terms of an agreement. These men were Henry Lantz and Daniel R. Bright, on the part of the Germans, and D. Scudder and Samuel Hepburn, Esq., on the part of the Presbyterians. They appointed Adam Follmer, Adam Gudekunst, Daniel R. Bright, and Samuel Chesnut, as a building committee, to contract for materials and workmen, and superintend the work. Most of this committee were storekeepers or mechanics, and as carpenters or masons who could undertake the whole are not found in a small village, as Milton then was, the committee had many contracts, and each member of the committee had his own account of work done and money paid by him. Milton increased rapidly in population and wealth—each denomination of Christians has now its own church. About the time of the separation in 1825, referees were appointed to adjust the accounts of the respective congregations with each other, and before them were produced the accounts of each member of the building committee, viz: the accounts of Chesnut, of Follmer, of Gudekunst, and of D. R. Bright, who were all then alive and present. This was not agreed to by all; and a suit was brought by Lantz and Bright against Hepburn and Scudder on the articles of agreement. Bright died, and Scudder died, and Hepburn refused to proceed on part of defendants, and the style and parties to the suit was by consent changed and stood:

Henry Lantz, who survived D. R. Bright, on behalf of the German Lutheran congregation, for the use of Adam Follmer, Adam Gudekunst, and Samuel Nicely, and Hannah, his wife, administrators of D. R. Bright, *against* Robert M'Guigan, John M. Patton, and others, trustees of the English Presbyterian Congregation in the borough of Milton, as representatives of said congregation.

There was also an agreement that the persons named in the suit were not to be personally liable, but recourse was to be had to the property of the church for what might be recovered. The cause was tried—writ of error taken to this court; the judgment was affirmed, and on executions the interest of the Presbyterians sold and struck off for $800, to Adam Follmer, in 1831.

This suit is brought to recover from the estate of Adam Follmer, who died about the beginning of 1832, the whole sum of $742, being the balance of money bid, after deducting the costs. Bright had died about 1827, and Adam Follmer and Hannah the widow of Bright, administered. She afterwards married Nicely. The plaintiffs contend that the suit and recovery, though in the name of Lantz, was for the use of Bright's administrators; and the defendants contend that it was to pay money advanced by Follmer in the lifetime of Bright, to pay money advanced by Gudekunst, who was never administrator of Bright, nor, so far as appears, in any way connected with his estate, and to pay Bright's representa-

tives for money advanced by Bright, or perhaps to the German congregation, if it had paid Follmer, and Gudekunst, and Bright.

The plaintiffs, to support their case, offered to read from the record of that case, the charge of Judge Chapman, in the case above referred to, which had been excepted to and returned with and made part of the record. It began with this sentence: " this action is brought by Henry Lantz, who survived Daniel R. Bright, in behalf of the German Lutheran Congregation, for the use of the administrators of D. R. Bright, deceased, to recover from the defendants, trustees of the English Presbyterian Congregation in the borough oᶠ Milton, a sum of money that has been advanced, as is alleged, more than their moiety or half part of the expense of building of the Milton church." This was offered for the purpose of *proving that the administrators* of D. R. Bright were the persons for whose use the suit was prosecuted; and for the purpose of showing that Adam Gudekunst, Adam Follmer and S. Nicely and wife, were *considered* the administrators of D. R. Bright. The court admitted the record in evidence, but refused to admit that part of the charge above quoted, for the purpose for which it was quoted. To this the plaintiff excepted.

The court were right: no question was raised as to the rights of Gudekunst, Follmer and Bright's administrators; no evidence given as to the amount each claimed; no proof of how the change of plaintiffs was made, or at whose instance. The court were *not* called on to give an opinion, and clearly had no idea of affecting the rights of those now before the court. Besides, the court would not bind the plaintiffs as to their respective proportions of the money to be recovered. That was not the matter in issue. The recital of what the testimony was by the Judge *is not evidence*, except perhaps in very special cases.

The plaintiff then offered from the record above-mentioned, as follows :—

26th of January 1831, jury called. Before verdict, defendants except; verdict for plaintiff, $1263.97. *Eodie*, judgment.

No. 11, April term 1831, *fieri facias*. Land levied and condemned.

12th of April 1831, writ of error filed.

Levied on the undivided half part of the church and building situate in the borough of Milton, called "Harmony Church," bounded on or near Mahoning street, and being on the base about 40 by 50 feet, and in height two stories.

8th of July 1831, judgment affirmed in Supreme Court—*remittitur*.

No. 25th of August 1831, *venditioni exponas* thus returned: " To the judges within named. I do testify, that after due, public and timely notice by me given of the time and place, I did, on Saturday the 13th day of August 1831, expose the church and building within mentioned to sale, at public vendue or outcry, and

[Lazarus v. Follmer.]

sold the same to Adam Follmer, for the sum of $800; which sum, after deducting costs, I have applied to the payment of the judgment."

20th of August 1831, Sheriff Lazarus acknowledged deed to Adam Follmer for the undivided half part of the church and building situate in the borough of Milton, called "Harmony Church," sold as the property of the English Presbyterian Congregation of the borough of Milton.

24th of February 1823, letters of administration to Adam Follmer and Hannah Bright, upon the estate of Daniel R. Bright.

6th of January 1831, will of Adam Follmer; William and David Follmer, executors.

3d of August 1836, discharge of Hannah Nicely, as administratrix of Daniel R. Bright, deceased, by the Orphans' Court of Northumberland county.

10th of July 1837, letters of administration *de bonis non* to Abraham Kreamer, upon the estate of Daniel R. Bright.

An assignment of Peter Lazarus, of all his right, claim and demand in the suit, to Abraham Kreamer, administrator of Daniel R. Bright; all the costs of suit which had accrued, and such as the court estimated might accrue, having been paid into court.

The plaintiff offered to prove by Peter Lazarus, that he, as sheriff of Northumberland county, delivered a deed for the undivided half part of the brick church in Milton, called the "Harmony Church," to Adam Follmer, about the 23d of November 1831, and took a receipt of that date from Adam Follmer, as one of the plaintiffs in the judgment on the record for the purchase money, to wit: the sum of $800; that he paid only $57.59¾ of the purchase money, which was applied towards the payment of the costs; the balance, to wit: $742.40¼, never was paid. The defendants objected, on the ground that it contradicted the return made by the sheriff, and disclosed no cause of action, and the claim was barred by the Statute of Limitations.

The plaintiff showed and read release of 10th of February 1842; Abraham Kreamer, administrator *de bonis non* of Daniel R. Bright, deceased, to Peter Lazarus. It was admitted that Samuel Nicely died in the fall of 1832.

The plaintiff also offered the receipt of November 23d 1831, signed Adam Follmer and Adam Gudekunst, for the sum of $742.40¼—the balance raised on the sale in the above stated suit, after deducting $57.59¾ costs—in full. It was also admitted that Adam Gudekunst died eight or ten years ago.

The above was the whole evidence intended to be laid before the jury by the plaintiff, except that the plaintiff also offered to show that Adam Follmer was the acting administrator of Daniel R. Bright, did the whole business, and received all the compensation.

The defendant showed record of suit against Peter Lazarus,

[Lazarus v. Follmer.]

brought July 21st 1837, and nonsuit, January 9th 1840. The court rejected the evidence, and the plaintiff excepted, and assigned for error, that " the court erred in rejecting the evidence offered at the trial, contained in the several bills of exception."

In order to determine whether the evidence offered, or any part of it, was legal evidence in the case trying, we must remember that that cause was instituted and carried on to decide what proportion of the expense of erecting the church was due from the Presbyterians, and it decided that matter: it was instituted in the names of Lantz and Bright, on behalf of the Germans, against Hepburn and Scudder, on part of the Presbyterians. Some of the parties on record died, some were changed by consent, and an agreement was filed that the parties on record should not be personally liable. This cause is to try whether Bright's estate is entitled to all the money recovered, or whether Follmer's or Gudekunst's representatives are each entitled to a part, and how much each has a right to. The parties are different; the objects in contest are different; the evidence must be different, to meet the issues here; even depositions taken in that case, could not be evidence in this. The only purpose for which that record could be used in this case, was to show the amount recovered. It was admitted for that purpose — but it is attempted to use it to show that Bright's representatives are entitled to all the money recovered, and of course, that Gudekunst and Follmer are not entitled to any part of it. It is not evidence for this purpose. We must see that the evidence offered was offered as making out the plaintiff's whole case; in this point of view it was rightly rejected by the court. No part of it was evidence to prove anything not in issue, not tried nor decided in that case. In this case the parties are different—the claim is against a different party—the dispute is different — and to support the suit, the testimony must be different. The plaintiff here must prove how much he advanced of his own funds — there it was proved how much the Germans advanced, how much Follmer paid, how much Gudekunst paid—and it was not in issue, not tried, not decided how much each was entitled to. Generally, when a suit is marked for the use of a person, he is entitled to receive the money—if for the use of several persons, any one may receive it, and his receipt to the sheriff is good, and discharges the officer—at least this would be the case unless notice not to pay all to one has been given. There is enough difficulty and responsibility on a sheriff already. If where there are several plaintiffs who recover, and no notice to the contrary is given to the sheriff, and he pays the money to one or two of them, he has nothing to do with their disputes about their respective proportions. Perhaps the case in 1 *Watts* 351, where the sheriff paid to one judgment creditor more than was due on his judgment, may not apply to a case like this, where a

IV. — B

[Lazarus v. Follmer.]

sheriff pays on the only judgment, the exact amount of it, and the claimants to interest in that judgment contend about the amount of their respective interests; with this the sheriff has nothing to do, and it is not easy to see how he can maintain this suit.

Judgment affirmed.